IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN MICHAEL GROOM,

            Plaintiff,

    v.

CAROLYN W. COLVIN,
Commissioner of Social Security

           Defendant.

Case No. 1:15-cv-02103-SI

**OPINION AND ORDER**

Tim Wilborn, P.O. Box 370578, Las Vegas, NV 89137. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hebert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 Southwest Third Avenue, Suite 600, Portland, OR 97204; John C. Lamont, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       John Groom ("Plaintiff") applied for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI"). The final decision of the Commissioner of the Social

Security Administration ("Commissioner") held that Plaintiff's disability began August 1, 2014,

which was after Plaintiff's date last insured. Thus, the Commissioner denied Plaintiff's

application for DIB and granted his application for SSI beginning on August 1, 2014. Plaintiff

seeks review of this final decision by the Commissioner. Plaintiff argues he was disabled before

his date last insured, and that he is thus entitled to DIB and SSI. For the following reasons, the

Commissioner's decision is reversed and remanded for an award of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see

also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec.

Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th

Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this Court may not substitute its judgment

for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193,

1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may

not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495

F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th

Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554

F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff based his disability allegations on a combination of impairments, including asthma, chronic obstructive pulmonary disease ("COPD"), complex sleep apnea, a history of hydrocephalus[1] with shunt placement, an arachnoid cyst of the cerebellum, major depressive disorder, anxiety disorder with dermatillomania,[2] a neurocognitive disorder, and migraines AR 40, 45, 254. Plaintiff was diagnosed with a hydrocephaly at the age of one and had a shunt placed in his brain at the age of two. AR 346. Plaintiff had the shunt replaced in 1999. AR 300.

Plaintiff filed an application for both DIB and SSI on September 3, 2012, alleging disability as of March 12, 2012. AR 39. Plaintiff was 42 years old at the alleged disability onset date. AR 476. In February 2015, the ALJ issued a partially favorable decision, finding Plaintiff disabled beginning on August 1, 2014. The ALJ held, however, that Plaintiff failed to meet his burden of proving disability before the date last insured, March 31, 2014. AR 12-13. Plaintiff appealed the ALJ's conclusion that Plaintiff was not disabled before August 1, 2014. The Appeal's Counsel denied Plaintiff's request for review on September 10, 2015, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff now seeks judicial review of that decision.

---

[1] Hydrocephalus is a condition in which the primary characteristic is excessive accumulation of fluid in the brain. *See* http://www.ninds.nih.gov/disorders/hydrocephalus/detail_hydrocephalus.htm.

[2] Dermatillomania, also known as "excoriation," is a mental disorder characterized by the repeated urge to pick at one's own skin, often to the extent that damage is caused. It is listed in the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular

and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.    The ALJ's Decision**

The ALJ applied the sequential process in his decision issued on February 25, 2015. AR 12-30. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity

since the alleged onset date. AR 14. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "asthma, COPD (chronic obstructive pulmonary disease), obstructive and central sleep apnea, history of hydrocephalus, arachnoid cyst, major depressive disorder, anxiety disorder due to dermatillomania, and neurocognitive disorder." *Id.* The ALJ found that there was insufficient evidence to find that Plaintiff's alleged migraine headaches were a medically determinable impairment. AR 15. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment. AR 15-18.

The ALJ then determined that before August 1, 2014, Plaintiff had the RFC to perform light work, with additional limitations. Specifically, the ALJ found that Plaintiff is

> limited to frequent climbing of ramps or stairs, balancing,
> stooping, kneeling, crouching, and crawling; no climbing of
> ladders, ropes, or scaffolds; must avoid concentrated exposure to
> gases, unprotected heights, and hazardous machinery; and work
> limited to 1-2 step tasks involving simple work-related decisions
> and requiring only occasional interaction with the general public.

AR 18. The ALJ also found that beginning on August 1, 2014, Plaintiff has the RFC to perform light work subject to the same limitations, but additionally "[Plaintiff] is unable to engage in sustained work activity for a full 8-hour workday on a regular and consistent basis." AR 27.

In reaching his RFC conclusions, the ALJ considered Plaintiff's symptom testimony and the testimony of Plaintiff's wife, but found this testimony not entirely credible regarding the "intensity, persistence and limiting effects of [Plaintiff's] symptoms." AR 19, 26. The ALJ also considered the reports of several of Plaintiff's medical providers, including his primary care provider and two neurologists, as well as a state agency consulting physician and two state consulting psychologists. The ALJ gave limited weight to the opinion of Plaintiff's consulting neurologist, Dr. Matthew Miller, and little weight to certain opinions of Plaintiff's treating

neurologist, Dr. Kevin Sullivan. The ALJ concluded that Dr. Miller's assessment was limited only to Plaintiff's neurological conditions and that Dr. Sullivan's opinion was inconsistent with objective evidence. AR 25-26. The ALJ also gave limited weight to the opinion of Dr. Brian Dossey, the Commissioner's examining medical consultant, because the assessment did not take into account Plaintiff's impairment in combination or account for fatigue. AR 25. The ALJ gave great weight to the opinion of Thomas B. Shields, PhD, the Commissioner's examining psychological consultant. AR 25. The ALJ also gave little weight to the opinion of Katherine Warner, PhD, a psychologist who examined Plaintiff at the request of the State of Oregon, Department of Human Services, as it related to her opinion regarding Plaintiff's condition before August 1, 2014. The ALJ, however, gave her opinion great weight in determining the nature of Plaintiff's limitations beginning on August 1, 2014. AR 28.

At step four, the ALJ found that Plaintiff could not perform his past relevant work. At step five, the ALJ heard testimony from a vocation expert ("VE"), who testified that an individual with like characteristics and impairments of the claimant (before August 1, 2014) could perform work existing in significant numbers in the national economy, specifically as a small parts assembler, cannery worker, or hotel/motel housekeeper. AR 29. Accordingly, the ALJ concluded Plaintiff failed to establish disability before August 1, 2014. AR 30.

## DISCUSSION

### A.  Dr. Sullivan's Opinion

Plaintiff argues that the ALJ did not provide adequate reasons to reject the opinions of Dr. Sullivan, particularly his opinions from October 2013. The Commissioner responds that Dr. Sullivan's opinion conflicts with other medical opinion evidence and that the ALJ properly weighed the conflicting opinions in giving little weight to Dr. Sullivan's opinion.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

Dr. Sullivan treated Plaintiff in 2012, 2013, and 2014. AR 476-81, 504-05, 530-32. In August 2012, Dr. Sullivan examined Plaintiff. Dr. Sullivan noted conjugate eye movement, normal gate, normal motor function, and some issues with reflexes. Dr. Sullivan opined that "[t]he patient appears to be doing fine at the present time. . . . I do not feel that anything further needs to be done. If he does not change a great deal clinically, I would not feel there was a need to repeat his CT scan for at least 2-3 years." AR 477.

On October 15, 2013, Dr. Sullivan again examined Plaintiff. AR 530-31. In his notes from the October 15th examination, Dr. Sullivan recited the subjective statements by Plaintiff and his wife that Plaintiff's balance has worsened, he gets dizzy more often, he stumbles and

falls, and that it happens "much more often" than it did a year ago. AR 530. They also noted that

Plaintiff sometimes has trouble with using the correct words and sometimes makes mistakes like

grabbing peanut butter when he intended to reach for milk in the refrigerator. *Id.* In his objective

observations, Dr. Sullivan noted the raw skin and scarring from where Plaintiff has picked his

skin, problems with eye movement, including left gaze causing slight double vision with mild

"left 6th nerve palsy," somewhat unsteady gait, a "hint of weakness" on the left side, some issues

with reflexes, heel-to-shin balance declining from "normal" to "fairly well," and otherwise

unremarkable findings. *Id.* Thus, Dr. Sullivan's objective findings show a deterioration in

Plaintiff's condition from Dr. Sullivan's objective findings in Plaintiff's 2012 examination. Dr.

Sullivan concluded that based on Plaintiff's current symptomology, he could not work, but Dr.

Sullivan wanted to see a new CT scan to see if there is something that could be surgically done

to improve Plaintiff's symptoms. AR 531.

After reviewing Plaintiff's new CT scan, on October 18, 2013, Dr. Sullivan had a follow-

up visit with Plaintiff and informed him that nothing in the CT scan shows that the shunts are not

working or that there is anything that can be done surgically. Dr. Sullivan noted that "[t]he

patient feels that he is gradually getting worse, and the only way I can explain that is that he is

aging a bit, and he has very little reserve given the problems that he has had with his brain since

birth." AR 532. Dr. Sullivan concluded that it was his opinion that Plaintiff "is not able to be

employed due to his imbalance, his tendency to fall, the difficulty that he is having with his

vision, and his severe anxiety associated with dermatillomania." *Id.*

Also on October 18, 2013, Dr. Sullivan completed a "Physical Medical Source Statement

Form." AR 478-81. In this form, Dr. Sullivan diagnosed Plaintiff with "posterior fossa arachnoid

cysts, imbalance, and anxiety" and gave him a "poor" diagnosis. AR 478. Dr. Sullivan further

found Plaintiff's symptoms included "poor balance, falling, eyes not focussing [sic], severe anxiety [and] tendency to pick at skin." AR 478. Dr. Sullivan relied on the clinical evidence and objective signs of Plaintiff's "[i]mbalance, dysconjugate gaze, slight [left] sided weakness, [and left] arm hyperreflexia." *Id.* Dr. Sullivan also noted that Plaintiff's emotional problems of dermatillomania and "severe" anxiety contributed to his limitations. AR 478-79.

Dr. Sullivan noted that a "competitive work environment" was inappropriate for Plaintiff. AR 479. Dr. Sullivan assessed a number of physical limitations and also opined that Plaintiff would be off task 25 percent or more of the day. AR 480-81. Dr. Sullivan further concluded that Plaintiff was incapable of even "low stress" work because of his dermatillomania and anxiety. AR 481.

Plaintiff saw Dr. Sullivan again in August 2014. At this visit, Dr. Sullivan noted that Plaintiff "is beginning to develop some increasing signs of cognitive impairment which is not unexpected." AR 504. Dr. Sullivan also prescribed a manual wheelchair for Plaintiff at this time. AR 505.

The ALJ gave little weight to Dr. Sullivan's 2013 opinions because the ALJ found that they were contradicted by the objective medical evidence and because Plaintiff's CT scans showed an unchanged condition during the relevant time period. Many of the opinions of Dr. Sullivan are contradicted by the opinions of other physicians, and thus the ALJ needed only to provide "specific and legitimate" reasons to discount those opinions by Dr. Sullivan. Although it does not appear that any medical provider specifically contradicted Dr. Sullivan's finding that Plaintiff would be off task 25 percent of the time, which would thus require "clear and convincing" evidence to discount, because the Court finds that the ALJ did not even provide

specific and legitimate reasons to discount this opinion, the Court does not reach whether this opinion was contradicted.

Regarding the ALJ's reliance on the lack of visible change in Plaintiff's CT scans, the Court does not find this to be a specific and legitimate reason. The ALJ found Plaintiff to be disabled as of August 1, 2014, without any change in Plaintiff's CT scan. Thus, the cause of Plaintiff's disability is not shown by a change in his CT scan. The ALJ provides no explanation for how he determined that as of August 1, 2014, despite no visible change in Plaintiff's brain condition, Plaintiff was disabled and yet the fact that there is no visible change in Plaintiff's brain condition is a reason to discount Dr. Sullivan's findings from 10 months earlier. The Court thus rejects the ALJ's analysis.

Regarding the ALJ's conclusion that Dr. Sullivan's 2013 opinion is not supported by the objective medical evidence, Plaintiff points to several medical opinions leading up to October 2013 that Plaintiff argues supports Dr. Sullivan's opinions. Some of these relate to Plaintiff's breathing issues and are not relevant to Dr. Sullivan's neurological opinions. Others, however, involve Plaintiff's balance, anxiety, and dermatillomania, and are relevant to Dr. Sullivan's opinions.

Plaintiff's primary care provider, Certified Family Nurse Practitioner ("CFNP") Mason Harrison, first saw Plaintiff on March 9, 2012, and noted that Plaintiff "obsessively picks at his face" and is on Celexa for anxiety and depression, which Plaintiff stated was not helping. AR 421. CFNP Harrison noted a large wound caused by Plaintiff's picking and referred Plaintiff for wound treatment. CFNP Harrison also prescribed Viibryd for Plaintiff's anxiety and depression. AR 423. On June 20, 2012, Plaintiff was again treated by CFNP Harrison. Plaintiff said that he had not sought the recommended treatment for the wound behind his ear because he

was "horrified" that he is injuring himself in this manner. AR 416. Plaintiff again reported that

the medication was not helping his mood or dermatillomania. CFNP Harrison noted a "large,

eroded [sic] lesion on [right] side of face and scalp." AR 417. CFNP Harrison prescribed Zoloft.

AR 418.

On August 14, 2012, CFNP Harrison noted Plaintiff's report that Zoloft was only

"minimally" helping and that Plaintiff "is still picking obsessively." AR 413. The wound on the

right side of Plaintiff's face and scalp was still present. CFNP Harrison adjusted Plaintiff's

dosage of Zoloft and diagnosed Plaintiff with "Depressive Disorder with OCD symptoms."

AR 415. Similarly, on October 16, 2012, Plaintiff sought treatment with CFNP Harrison for

depression and anxiety. AR 410. The wound was still present and CFNP Harrison continued the

diagnosis of depressive disorder with OCD symptoms. AR 411. CFNP Harrison prescribed

Prozac. AR 412.

On April 5, 2013, Plaintiff again visited CFNP Harrison. Plaintiff reported that his "mood

and OCD are still horrible. He cannot stop picking at himself and nothing seems to help that."

AR 407. Plaintiff also complained of blurry vision. Plaintiff still had the lesion on the right side

of his face and scalp. AR 409. CFNP Harrison again diagnosed Plaintiff with depressive disorder

with OCD symptoms, but for the first time also diagnosed Plaintiff with vertigo. AR 409.

On July 16, 2013, Plaintiff reported to CFNP Harrison that Plaintiff's depression is

"terrible" and that although he is not suicidal, he has no desire to live. AR 533. Plaintiff

continues to pick himself constantly, and CFNP Harrison noted that Plaintiff had "open sores" on

his head, neck and arms. *Id.* Plaintiff stated that he was embarrassed to go out in public and that

he was worried that his daughter was getting old enough to be ashamed of him. For the first time,

CFNP Harrison diagnosed Plaintiff with "Major Depression (recurrent)," instead of merely a depressive disorder, and continued the vertigo diagnosis.

In addition to CFNP Harrison, other medical providers have noted Plaintiff's issues with anxiety, dermatillomania depression, balance, dizziness, fatigue, and visual disturbances in the time period leading up to October 2013. *See, e.g.*, AR 439 (November 15, 2012 visit with Physician Assistant, Certified ("PA-C") Brett Rasmussen, who noted that Plaintiff's wife had called protective services because of Plaintiff's depression, noted Plaintiff's self-inflicted wounds, and diagnosed anxiety and depression); AR441 (December 18, 2012 visit with PA-C Rasmussen, who noted that Plaintiff was now picking his hand and causing a wound there); AR 333-37 (January 22, 2013 visit with Dr. Miller in which he noted visible open wounds, moderate difficulty with gait, and "significant neurologic abnormalities, including hyperreflexion mainly on the left side" but also found that Plaintiff was not "significantly disabled"); AR 338-42 (February 4, 2013 visit with Dr. Dossey in which he observed Plaintiff losing his balance if he turned quickly, being "a little bit wobbly" with his eyes open with "an increase in his wobble" with his eyes closed," but assessed only minimal workplace limitations); AR 344-49 (February 5, 2013 visit with Dr. Shields in which he observed that Plaintiff had an "unsteady" gait, mildly agitated psychomotor skills, "moderately-to-severely depressed mood," an appearance of fatigue and distraction, problems with attention, concentration and memory, and diagnosed Plaintiff with "major depressive disorder with a generalized anxiety component," as being "prone to significant distractibility," as having a "moderately impaired" ability to sustain concentration on tasks over extended periods of time, and as having a "moderately-to-severely impaired" ability to sustain persistence and pace).

The ALJ acknowledged that records from other practitioners "reveal findings similar to those noted by Dr. Sullivan" in October 2013, but nevertheless concluded that "a review of those findings show that they are not consistent from one examination to the next." AR 22. As the Ninth Circuit has cautioned, however, when evaluating mental health issues testimony cannot be rejected "merely because symptoms wax and wane in the course of treatment" because "[c]ycles of improvement and debilitating symptoms are a common occurrence." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Disability claims involving mental health issues must be evaluated with an "awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id.*

Moreover, the Court does not find the ALJ's conclusion that Dr. Sullivan's October 2013 opinion was contradicted by the objective medical evidence is supported by substantial evidence in the record. To the contrary, there is substantial evidence in the record that Plaintiff's symptoms were deteriorating in 2012 and 2013, including evidence based on objective observations and testing. For example, his dermatillomania worsened to the point where he was picking not only at his face but also his neck, arms, and hands. His depression worsened, causing his primary care provider in July 2013 to diagnose Plaintiff with major depression instead of a depressive disorder, and he was diagnosed with vertigo in April 2013. These findings all support Dr. Sullivan's conclusion that Plaintiff's anxiety and dermatillomania had worsened by October 2013. Additionally, Dr. Shields, who was retained by the Social Security Administration, found Plaintiff to have "significant distractibility" and to be moderately-to-severely impaired in concentration and persistence and pace, which supports Dr. Sullivan's October 2013 conclusion that Plaintiff would be off task 25 percent of the time. The Court finds

that the ALJ did not provide a specific and legitimate reason to discount Dr. Sullivan's October 2013 opinion.

**B.  Disability Onset Date**

Plaintiff challenges the ALJ's determination that Plaintiff was disabled only as of August 1, 2014, as not supported by substantial evidence in the record. Plaintiff argues that the medical evidence shows that he was disabled as of October 2013, or before.

In concluding that Plaintiff was disabled as of August 1, 2014, the ALJ relied heavily on Dr. Sullivan's August 2014 opinion that Plaintiff's *cognitive* problems had increased and rendered Plaintiff disabled. The ALJ offers no rational explanation for why Dr. Sullivan's August 2014 opinion regarding the worsening of Plaintiff's cognitive symptoms is credible but Dr. Sullivan's October 2013 opinion regarding the worsening of Plaintiff's anxiety, balance problems, and dermatillomania, which would cause Plaintiff to be off task 25 percent, is not credible.

The ALJ also gave "great weight" to Dr. Warner's October 31, 2014, opinion that Plaintiff had "marked" limitations in all areas of functioning, but only as of August 1, 2014. Again, the ALJ does not provide a rational explanation for accepting Dr. Warner's opinion that Plaintiff had *marked* limitations in all areas of functioning, but then concluding that all of those limitations must have arisen in the three months before Plaintiff was seen by Dr. Warner (between August 1, 2014 and October 31, 2014). Accordingly, the Court finds that the disability onset date selected by the ALJ is not supported by substantial evidence in the record.

## C. Remand[3]

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The United States Court of Appeals for the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence

---

[3] Because the Court finds that a remand for an award of benefits is warranted based on the ALJ's error in evaluating Dr. Sullivan's opinions and choosing the disability onset date, the Court does not reach Plaintiff's other allegations of error.

> casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.
>
> If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

As discussed above, the Court finds that the ALJ did not provide a specific and legitimate reason to reject Dr. Sullivan's October 2013 opinion that Plaintiff's symptoms had worsened, resulting in Plaintiff becoming disabled. The Court further finds that the record is complete and there are no outstanding issues that must be resolved. The medical evidence shows that Plaintiff's condition worsened in 2012 and 2013 and that his anxiety, depression, dermatillomania, and issues with concentration, persistence, and pace rendered him disabled. Crediting Dr. Sullivan's testimony as true, Plaintiff's disability onset date is October 15, 2013. The Court, therefore, remands this case for the calculation of an award of benefits, with a disability onset date of October 15, 2013.

**CONCLUSION**

The Commissioner's decision that Plaintiff is disabled beginning August 1, 2014 is

REVERSED. The Court finds that the record is complete and there would be no useful purpose

in further administrative proceedings. Therefore, this case is REMANDED for a calculation of

benefits with a disability onset date of October 15, 2013.

**IT IS SO ORDERED**.

DATED this 28th day of November, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge